<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

HELEN and KONSTANTINOS NATSIS,

              *Plaintiffs*,

     v.

RICHARD TURNER, in his official capacity as
Mayor of Weehawken, TOWNSHIP OF
WEEHAWKEN, FRANK LAMOLINO, in his
official capacity as a construction official for the
Township of Weehawken, FRANK TATTOLI, in
his official capacity as a construction official for
the Township of Weehawken, SHAWN
MASTERSON, in his official capacity as an
employee of the Township of Weehawken
Building Department, VINCENT RIVELLI, in
his official capacity as a health officer employed
by the Township of Weehawken, POLICE
OFFICER AUGUSTO A. SAME, POLICE
OFFICER CONRAD HABLITZ, SERGEANT
PATRICK CANNON, DETECTIVE THOMAS
WHITE, SERGEANT RENE ROA, POLICE
OFFICER IGGY MITOLO, CHIEF JEFFREY
FULCHER, SERGEANT JOHN JOHNSON,
TOWNSHIP OF WEEHAWKEN POLICE
DEPARTMENT; KIM PAMPERIN; TRACY
PAMPERIN; DENISE HODKINSON; HARRY
HODKINSON; DONNA JANDIK,
ADJACENT/UPHILL HOMEOWNERS and/or
employee of the Township of Weehawken, who
anticipated in the arrests of Konstantinos Natsis;
PMK GROUP; J. FLETCHER CREAMER &
SON; MAYO LYNCH ASSOC. INC.; AVELLA
GARAGE; A. ROBERT PAULDING a/k/a
Paulding Haich Design Architects and Paulding
Design Group LLC; M & A DEMOLITION &

Civil Action No. 13-7269

**<u>OPINION</u>**

EXCAVATION; MICHAEL AMBROSIO; JOSEPH FELL, ESQ. services not rendered engaging in a pattern of harassing of harassments and selective enforcement to HELEN AND KONSTANTINOS NATSIS,

*Defendants*.

**John Michael Vazquez, U.S.D.J.**

## I.   INTRODUCTION

This matter comes before the Court on Defendants'[1] partial motion to dismiss Plaintiffs' ("Plaintiff Helen," "Plaintiff Konstantinos," or collectively "Plaintiffs") Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  D.E. 134.  This suit arises out of a series of disputes between Plaintiffs, their neighbors, the Township of Weehawken, and various individuals who work for the Township of Weehawken stemming from Plaintiffs' attempts to clean up their (Plaintiffs') property.  The Court reviewed all submissions in support and opposition, and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b).  Plaintiff brought an eleven-count Second Amended Complaint ("SAC") after the Judge Cecchi granted in part and denied in part Defendants' motion to dismiss the First Amended Complaint.  D.E. 113.  For the reasons stated below, Defendants' motion to partially dismiss the SAC is granted in part and denied in part.

---

[1] When referring to Defendants collectively, the Court will refer to them as "Defendants," and when referring to a Defendant individually, the Court will refer to him or her by name.  The moving Defendants are Richard Turner, Frank Lamolino, Frank Tattoli, Shawn Masterson, Vincent Rivelli, August A. Same, Conrad Hablitz, Thomas White, Patrick Cannon, Rene Roa, Iggy Mitolo, Jeffry Fulcher, John Johnson, and Donna Jandik.

## II.     RELEVANT FACTS AND PROCEDURAL HISTORY[2]

In April of 2000, Plaintiffs purchased a two-family home located at 347-353 Park Avenue in Weehawken, New Jersey ("the Property"). SAC ¶ 35. The previous owners did not maintain the Property and it was littered with tires, sinks, toilet bowls, cans, bottles, plywood, dead trees, and rocks. The Property also had a leaking sewage pipe. *Id*. at ¶¶ 38-39; 79-81. It was later discovered that the title search done by Old Republic Title Insurance Company ("Old Republic") prior to purchasing the property failed to reveal an easement for sewer pipes through the Property. *Id*. at ¶ 85. Plaintiffs' predecessor in interest granted the easement in 1923 for the benefit of Plaintiffs' neighbors who live up the hill from the Property (the "uphill property owners"). *Id*. Plaintiffs discovered sewage, fecal matter, and flushed household products flowing onto the Property and leaking into their basement. *Id*. at ¶¶ 79-80.

On or about April 23, 2000, Plaintiffs were given a citation for attempting to clean up the Property. *Id*. at ¶ 40. The next day, Plaintiffs were advised by Nicholas Recarnarti, a construction official ("Construction Official Recarnarti"), that they could remove dead trees from the Property, but not stumps or roots, and that they should obtain a permit to do so. *Id*. at ¶¶ 41-43. On April 25, 2000, Plaintiffs received verbal permission from Vincent Mezzina at the Weehawken Department of Public Works to clean up the Property. *Id*. at ¶ 47. On the same day, Plaintiffs began cleaning up the Property, but Defendant Frank Lamolino stopped Plaintiffs again, and on May 2, 2000, issued Plaintiffs a summons for "failure to obtain prior approval from the Planning Board [for] cut[ting] down trees on [a] steep slope." *Id*. at ¶¶ 48, 51-53. On May 3, Construction

---

[2] The facts of this matter derive from the SAC. On a motion to dismiss, the Court accepts all of the factual allegations in Plaintiffs' complaint as true, *see Phillips v. County. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008), but need not give weight to mere conclusory statements, *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Official Recarnarti left Plaintiffs a voicemail message giving them permission to proceed with the cleanup. *Id*. at ¶ 54. Plaintiffs once again began to clean their Property. *Id*. After being threatened with another summons by Defendant Lamolino, Plaintiffs applied for and received a permit from the Weehawken Building Department on May 8 "to cleanup garbage, debris, trees, leaves, [and wood]." *Id*. at ¶ 61. On May 15, Plaintiffs received a permit to perform home renovation work. *Id*. at ¶ 62. Subsequently, Defendant Lamolino issued Plaintiffs a second summons for failure to stop cutting down trees. *Id*. at ¶ 65. On June 13, Plaintiffs were ordered by the Weehawken Municipal Court to pay $2,365 in fines for failure to obtain approval from the Building Department despite having been issued permits. *Id*. at ¶ 67. Plaintiffs then complained to Weehawken Mayor Richard Turner multiple times about the dead trees and falling rock on the Property, but were denied a meeting with him. *Id*. at ¶¶ 68-70. On July 3, Plaintiffs went to the Weehawken Building Department to "request permission" to remove the dead trees, but they were denied. *Id*. at ¶ 75.

On February 21, 2001, Old Republic informed Plaintiffs that it believed Plaintiffs' uphill neighbors had a duty to maintain the easement. *Id*. at ¶ 109. Plaintiffs further allege that because their uphill neighbors support Mayor Turner's administration, Mayor Turner and his affiliates commenced a concerted practice of harassment and retaliation against Plaintiffs, which included a scheme to ensure that Plaintiffs were legally responsible for the sewer easement. *Id*. at ¶¶ 111-113.

In or around April 2001, the Building Department also revoked Plaintiffs' permission to clean up the sewage debris, stating that Plaintiffs were destroying the sewage line and undermining the integrity of the Palisades Cliff (on which the Property sat) by gardening and cleaning up the area. *Id*. at ¶ 114. On April 2, 2001, Defendant Lamolino issued Plaintiffs two violations for non-compliance with the "Steep Slope Ordinance." *Id*. at ¶ 116. Later that month, Plaintiff Helen

contacted and spoke with the Jersey Journal about the sewage pipe. *Id.* at ¶¶ 121-122. While Helen and the reporter were in the process of discussing Plaintiffs' property, Defendant Lamolino apparently intervened. *Id.* at ¶ 124. The next day Helen called the Jersey Journal and was informed that the Township attributed the pipe damage to Plaintiff Konstantinos and no story would be written. *Id.* at ¶ 125.

On May 14, 2001 Plaintiffs hired Terroro Demolition to clean their basement and remove other debris. *Id.* at ¶ 129. Defendant Lamolino then came to the Property and told Terroro Demolition that no permit would be issued for their work and ordered the contractors to leave. *Id.* at ¶ 130. Then, on May 16, 2001, Defendant Lamolino issued a complaint against Plaintiffs for "[f]ailure to comply with [the] prior order issued on 4/2/01 requiring owner to restore land on steep slope area." *Id.* at ¶ 131.

A few months later, on December 11, 2001, Plaintiff Konstantinos was charged with violating Local Ordinance 16-12.4 for cleanup and control of a hazardous material. *Id.* at ¶ 151. He was originally convicted, but the conviction was later dismissed on appeal. *Id.* at ¶ 152. Then on February 6, 2002, Plaintiff Konstantinos was arrested by Defendant Sergeant Cannon and charged under N.J.S.A. 2C:17-2(2) for "Causing or Risking Widespread Injury" after being accused by the uphill property owners of destroying the PVC sewer pipe on the Property. *Id.* at ¶ 154. The charge was originally a crime in the third degree, but was downgraded to a disorderly persons offense in municipal court. *Id.* at ¶ 156. Plaintiff Konstantinos again appealed to the Superior Court of New Jersey, Hudson County, where a judgement of acquittal was entered. *Id.* at ¶ 157.

On May 30, 2002, Plaintiffs commenced litigation in the Superior Court against Defendant Township of Weehawken, Richard Allgayer (an uphill owner), and Old Republic (the "Natsis I

Litigation"). *Id*. at ¶ 164. Following the commencement of the Natsis I Litigation, Mayor Turner allegedly instructed, commanded, and/or otherwise directed public officials and private actors named as Defendants in this case to increase their intimidation of Plaintiffs. *Id*. at ¶ 166. Plaintiffs then amended the 2002 complaint to include additional defendants who are named in the immediately pending SAC, such as Sergeant Patrick Cannon and Officer Hablitz.

On or about January 28, 2004, Defendant Hablitz, a police officer, and another officer from the Weehawken Police Department approached Plaintiff Konstantinos while he was shoveling snow and demanded that he produce identification, which Plaintiff Konstantinos produced. *Id*. at ¶¶ 186-187. Defendant Hablitz and the police officer then accused and charged Plaintiff Konstantinos with throwing snow in a public street in violation of a Weehawken municipal ordinance. *Id*. at ¶ 188. He was then arrested, which Plaintiffs allege was baseless and designed to intimidate them from exercising their free speech rights. *Id*. at ¶¶ 189-90.

On February 2, 2004, Defendant Lamolino and other officials came to the Property and were denied access by Plaintiffs, but nonetheless inspected the Property and took photographs. *Id*. at ¶ 191. After that visit, on February 11, 2004, Plaintiffs were served with a notice accusing them of creating a public health nuisance due to the leaky sewer pipes and instability of the slope. *Id*. at ¶ 192. As noted, Plaintiffs were informed by their title insurance company that the sewer easement required that Defendants Kim and Tracy Pamperin (both uphill property owners) maintain the sewer line easement in the slope. *Id*. at ¶ 194. Furthermore, an engineering report from 2002 indicated that the slope instability was caused by falling rock from the uphill property owners' land. *Id*. at ¶ 195. The falling rock was caused by the sewage easement line, improper drainage systems, and lack of retaining walls. *Id*.

In 2004, the attorneys in the Natsis I Litigation executed a partial stipulation of dismissal without prejudice against Defendants Township of Weehawken, Construction Official Tattoli, Sergeant Cannon, Officer Hablitz, Defendant Rivelli, and others. *Id.* at ¶¶ 226-27. The stipulation of dismissal stated, in pertinent part, that "[t]hese defendants agree to waive all statute of limitations defenses." *Id.* at ¶ 228. After a jury trial on the remaining claims, on March 5, 2005, the Superior Court found in favor of Weehawken for $123,841. *Id.* at ¶ 235. On January 9, 2007, the Appellate Division overturned the trial court's judgment and remanded for further proceedings. *Id.* at ¶ 280. Plaintiffs allege that after this victory, Defendants "continued their pattern of harassing and intimidating Plaintiffs for speaking out against the town [and] challenging them in court." *Id.* at ¶ 282. Then, on or about June 3, 2008, Plaintiffs won a verdict of $157,000 after a trial on remand. *Id.* at ¶ 313.

On September 28, 2006, Plaintiffs received a letter from an attorney for the Township of Weehawken, copying Mayor Turner, explaining that the Township of Weehawken was interested in buying the Property. *Id.* at ¶ 274. The letter further explained Township employees and agents required full access to the Property to conduct "studies, surveys, testing and the like." *Id.* Thereafter, in 2007, a sump pump station was installed into the slope to benefit the uphill property owners who were supporters of Mayor Turner. *Id.* at ¶ 291. The uphill property owners were never issued any citations or summonses, and they never were threatened due to the easement's disrepair. *Id.* at ¶ 292.

In September of 2008, Defendants Chief Jeffry Fulcher and Sergeant Patrick Cannon of Weehawken Police Department reported that Plaintiffs agreed to remove two U-Haul vehicles from their driveway. *Id.* at ¶ 333. After this incident, Plaintiff Helen filed an Internal Affairs

complaint against Defendants Fulcher and Cannon, asserting that Plaintiffs had not agreed to the removal of the two U-Haul vehicles. *Id.* at ¶ 333.

In addition to the foregoing allegations, Plaintiffs also claim that their applications for permits were often lost or not processed by the Weehawken Building Department. *Id.* at ¶ 295. In 2005, Plaintiffs submitted a site plan to build a three-story structure on their property, but it was never acknowledged. *Id.* at ¶ 297. In March 2008, Plaintiffs applied for a permit to clean their property and again no response was received. *Id.* at ¶¶ 296-98. Also in May 2008, a contractor went to the Weehawken Building Department on behalf of Plaintiffs and submitted a request for a permit, but it was subsequently denied. *Id.* at ¶¶ 309-10. Plaintiffs submitted an Open Public Records Act ("OPRA") request regarding whether permits were obtained by their uphill neighbor in 2010. *Id.* at ¶ 353. This request also never received a response. *Id.*

On May 9, 2012, after receiving no permits through the Weehawken Building Department, Plaintiffs applied for a permit from the Hudson-Essex-Passaic Soil Conservation District ("HEPSCD") to clean their driveway and parking lot area of rocks. *Id.* at ¶ 384. The permit application was approved the following day. *Id.* at ¶ 385. Plaintiffs learned through an OPRA request that Mayor Turner had telephoned the HEPSCD in January of 2013 and discussed Plaintiffs' property. *Id.* at ¶¶ 395-96. Mayor Turner said he was "upset with the agency" and that its issuing a permit to Plaintiffs "would delay court proceedings."[3] *Id.* at ¶ 397.

On April 5, 2009, Plaintiff Konstantinos was again arrested for striking Defendant Shawn Masterson in the chest. *Id.* at ¶¶ 343-46. Three years later, on April 5, 2012, Plaintiff Konstantinos was arrested for having "recklessly created a risk of widespread injury or damage, specifically by

---

[3] It is unclear from the SAC which "court proceedings" Mayor Turner was referring.

removing the bluestone from the foundation of a residence on top of the hillside." *Id.* at ¶ 376. The criminal complaint was later dismissed. *Id.* at ¶ 378.

On October 26, 2015, Plaintiff Konstantinos was criminally charged with violations of N.J.S.A. "2C:18-3B and 2C:17-3A(2)" for digging a twenty-foot trench on his neighbor's property. *Id.* at ¶¶ 474–75. Plaintiff appeared in Weehawken Municipal Court as a result of the charges, but the matter was moved to Bayonne Municipal Court because of Weehawken's conflict of interest resulting from this litigation between Plaintiffs and Weehawken. *Id.* at ¶ 477. When Plaintiff Konstantinos appeared in Bayonne Municipal Court, Elise DiNardo, Esq. appeared as the special prosecutor. *Id.* at ¶ 478. Ms. DiNardo is also counsel for Defendants in this case. *Id.* at 479.

Plaintiffs commenced this litigation on December 3, 2013, and filed an amended complaint on December 12, 2014. D.E. 1 & 64. On February 29, 2016, Judge Cecchi granted in part and denied in part Defendants' motion to dismiss the amended complaint. D.E. 113 ("J. Cecchi Op."). Judge Cecchi granted the motion dismissing the following claims without prejudice: Count One (retaliation for lack of political affiliation under the New Jersey Civil Rights Act ("NJCRA")), Count Two (retaliation for lack of political affiliation under 42 U.S.C. § 1983), Count Three (retaliation for exercising free speech rights under the NJCRA), Count Four (retaliation for exercising free speech rights under 42 U.S.C. § 1983), Count Seven (abuse of process under 42 U.S.C. 1983), and Count Ten (civil conspiracy under 42 U.S.C. § 1985). *Id.*; D.E. 114.

Plaintiffs filed the SAC (D.E. 123), alleging the following eleven causes of action: (1) "New Jersey Civil Rights Act[,] N.J.S.A. 10:6-2, *et seq.* Article 1, Section 18 (Lack of Political Affiliation)," (2) "42 U.S.C. § 1983 (Retaliation for Lack of Political Affiliation)," (3) "New Jersey Civil Rights Act[,] N.J.S.A. 10:6-2, *et seq.* Article 1, Section 18 (Free Speech Retaliation)," (4) "42 U.S.C. § 1983 (Free Speech Retaliation)," (5) "False Arrest," (6) "Malicious Prosecution," (7)

"Abuse of Process," (8) "42 U.S.C. § 1983 (Equal Protection)," (9) "42 U.S.C.§ 1983 (Municipal Liability)," (10) "42 U.S.C. § 1985 (Civil Conspiracy)," and (11) "Taking of Property without Just Compensation." SAC ¶¶ 407-509.

Defendants filed the current partial motion to dismiss (D.E. 134), which Plaintiffs opposed (D.E. 141).[4]  Defendants have not moved to dismiss Counts Six, Eight, Nine, and Eleven.

At the outset, Plaintiffs have consented to the dismissal of the following Defendants: Kim Pamperin, Tracy Pamperin, Township of Weehawken Police Department, J. Fletcher Creamer & Son, Avella Garage a/k/a Highpoint, Robert Paulding a/k/a Paulding Haich Design Architects and Paulding Design Group LLC, M&A Demolition & Evacuation, Michael Ambrosio, Joseph Fell Esq., Detective Thomas White, Sergeant Rebe Roa, Officer Iggy Mitolo, Donna Jandik, Officer August A. Same and Sergeant John Johnson.  D.E. 125; Pl. Op. at 1; 145.  All but two of these Defendants have already been dismissed through a consent order executed by the parties and ordered by the Court.  D.E. 125 & 145.  In their opposition brief, Plaintiffs agreed to voluntarily dismiss Defendants Same and Johnson.  D.E. 141 at 1.   Same and Johnson will be dismissed in the Court's order accompanying this opinion.

### III.   LAW AND ANALYSIS

#### A.  Standard of Review

According to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court should dismiss a complaint when it fails "to state a claim upon which relief can be granted."  In analyzing a motion to dismiss under Rule 12(b)(6) the court will "accept all factual allegations as true, construe the

---

[4] Defendants' brief in support of its motion to dismiss (D.E. 134) will be referred to as "Def. Br." Plaintiffs' brief in opposition (D.E. 141) will be cited as "Pl. Op."  Defendants' reply brief (D.E. 143) will be referred to as "Def. Reply."

complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In addition to the complaint, the Court may also consider any exhibits attached thereto. *See Pension Ben. Guar. Corp. v. White Consol. Indus.*, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993*)* (noting that when deciding a motion to dismiss, courts generally consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record"). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining whether a complaint is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. While not a "probability requirement," plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

### B. 42 U.S.C. § 1983 and NJCRA Claims Against Defendants, Hablitz, Cannon, Fulcher, and Lamolino

Defendants argue that Counts One through Four against Defendants Hablitz, Cannon, Fulcher, and Lamolino should be dismissed as barred by the statute of limitations. Def. Br. at 13-15. Plaintiffs counter that the claims against Defendants Hablitz and Cannon should not be dismissed because they waived the statute of limitations defense as to these claims which were originally alleged in the Natsis I Litigation. Pl. Op. at 23-28. The Court finds that the claims

against Fulcher and Lamolino are barred by the statute of limitations but the claims against Hablitz and Cannon are not.

Generally, "statute of limitations is an affirmative defense not routinely decided on a motion to dismiss." *Abdul-Aziz v. Lanigan*, No. 14-2026, 2016 WL 1162753, at *4 (D.N.J. Mar. 24, 2016). There is an exception, however, if "the plaintiff's tardiness in bringing the action [is] apparent from the face of the complaint." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 105 n.13 (3d Cir. 2010) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 & n.3 (3d Cir. 2002)). "The statute of limitations for any § 1983 claim is the forum state's limitations statute for personal injury actions." *Levine v. N.J. State Dep't of Cmty Affairs*, 231 Fed. App'x 125, 127 (3d Cir. 2007) (citing *Wilson v. Garcia,* 471 U.S. 261, 266–67 (1985)). New Jersey has a two-year statute of limitations period for personal injury actions, and therefore the Third Circuit has adopted the same two-year period for Section 1983 actions brought in New Jersey. *Id.* Similarly, a two-year statute of limitations applies to claims brought pursuant to the NJCRA. *Citta v. Borough of Seaside Park*, No. 09-865, 2010 WL 3862561, at *10 n.3 (D.N.J. Sept. 27, 2010) (collecting cases and concluding that two-year statute of limitations applies to NJCRA claims).

Plaintiffs' claims against Defendants Fulcher and Lamolino arise out of events that occurred several years before the filing of the initial complaint, which was filed on December 3, 2013. *See* D.E. 1. Thus, to avoid being time-barred by the two-year statute of limitations period, Plaintiffs' claims must have arisen on or after December 3, 2011. Pursuant to the unequivocal allegations in the SAC, the most recent claim as to Defendant Fulcher was in September 2008. SAC ¶ 332. The most recent allegation as to Defendant Lamolino occurred on February 2, 2004. *Id.* at ¶ 191. Plaintiffs' Section 1983 and NJCRA claims (Counts One through Four) against

Defendants Fulcher and Lamolino are therefore time-barred by the two-year statute of limitations. These claims are dismissed with prejudice.

The events giving rise to the Section 1983 and NJCRA claims against Cannon and Hablitz occurred on February 6, 2002 and January 28, 2004, respectively. *Id.* at ¶¶ 154, 186. While these claims would normally be barred by the statute of limitations, Hablitz and Cannon waived any and all statute of limitations defenses in a stipulation for voluntary dismissal without prejudice, filed on December 13, 2004 in the Natsis I Litigation. D.E. 123-2 (stating that Defendants Hablitz and Cannon "agree to waive any and all statute of limitations defenses"); *see also Shu v. Wang*, No. CV 10-5302, 2016 WL 6080199, at *9 (D.N.J. Oct. 17, 2016) (recognizing that statute of limitations defense may be waived by agreement). Critically, the statute of limitations waiver did not contain any time constraint indicating the duration of the waiver. Plaintiffs therefore argue that the Court should not dismiss the claims against these Defendants. Pl. Opp. at 23.

In her opinion, Judge Cecchi dismissed the Section 1983 and NJCRA claims with respect to Defendants Hablitz and Cannon without prejudice because Plaintiffs failed to adequately plead that the facts alleged as to Hablitz and Cannon in the Natsis I Litigation are the same as those brought in this action. J. Cecchi Op. at 9. To remedy this deficiency, Plaintiffs filed the amended complaint from the Natsis I Litigation as an exhibit to the SAC. The Natsis I Litigation complaint demonstrates that the originally pleaded facts against Hablitz and Cannon are the same as those alleged in the SAC. Specifically, Plaintiffs claim in both the Natsis I Litigation complaint and the SAC that Defendant Cannon "falsely" arrested Plaintiff Konstantinos on February 6, 2002. D.E. 123-1, Count 12, ¶¶ 1–4; SAC ¶ 154. Plaintiffs also allege in both complaints that Defendant Hablitz "falsely" arrested Plaintiff Konstantinos on January 28, 2004. D.E. 123-1 Count 15, ¶¶ 1–4; SAC ¶ 186-189. Since the claims from the Natsis I Litigation and those asserted here arise from

13

the same set of facts, Plaintiffs have made a threshold showing that Defendants Hablitz and Cannon waived any and all statute of limitations defenses.[5]   The motion to dismiss Count One through Four is denied as to these Defendants.

### C. Plaintiffs' Retaliation Claims

Defendants move to dismiss Plaintiffs' retaliation claims (Counts One through Four) of the SAC against Mayor Turner in his personal and official capacity under 42 U.S.C. § 1983 and the NJCRA.  Plaintiffs allege that Defendants retaliated against them for failing to politically support Mayor Turner and for exercising their right to free speech under the Federal and State Constitutions.

"In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."  *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir.2003)).   "The key question in determining whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights."   *Id.* (citing *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (internal quotation marks omitted); *see also Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998) ("The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of [a constitutionally] protected right.").

---

[5] This Opinion does not conclusively find that the waiver was in fact valid and enforceable. Instead, the Court finds that for purposes of the current motion, Plaintiffs have made a sufficient threshold showing that Defendants Hablitz and Cannon waived the statute of limitation.

### 1.  Mayor Turner in his Personal Capacity

To sue a government official in his or her personal capacity in a civil rights action, the official "must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988)).  "[A] civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." *Id*. (citing *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir.1980)).

Here, Defendants argue that Plaintiffs have not alleged sufficient facts to show that Mayor Turner was personally involved in any retaliation against Plaintiffs.  Def. Br. at 18.  Defendants note that the only specific claim as to Mayor Turner is that he contacted the HEPSCD in January 2013 and discussed Plaintiffs' property.  Def. Reply at 9 (citing SAC ¶¶ 394-397).  Because the complaint must allege "more than labels and conclusions" of personal involvement, Defendants argue that the Court should dismiss the retaliation claims against Mayor Turner in his personal capacity. *Id*. (citing *Twombly*, 550 U.S. at 555.).

Plaintiffs argue that Mayor Turner's phone call to HEPSCD in January 2013 regarding Plaintiffs' property was evidence of retaliation for, among other things, their refusal to support Mayor Turner's administration, filing the Natsis I Litigation, reporting local government officials to the media, and directly complaining to government officials.  Pl. Opp. at 31; SAC ¶¶ 399, 439.  Plaintiffs contend that on January 22, 2013, as a result of Mayor Turner's phone call, HEPSCD revoked Plaintiffs' permit to removing more than 3,600 square feet of soil and fallen rocks from

their property, and ordered Plaintiffs to stop all activity or otherwise face a $3,000 per day fine. SAC ¶¶ 399–400.

Plaintiffs meet the first required element for retaliation. Refusing to support Mayor Turner's administration, filing the Natsis I Litigation against the Weehawken Defendants, reporting local government officials to media sources, and complaining directly to government officials are constitutionally protected actions under the First Amendment. *See Bradshaw v. Township of Middleton*, 296 F. Supp. 2d 526, 546 (D.N.J. 2006) (stating that "[t]he First Amendment guarantees 'the right of the people . . . to petition the Government for redress of grievances'" and that citizens have the right to be free from government retaliation for exercising this right). However, Plaintiffs fail to meet the second element. While they allege that Mayor Turner retaliated against them by calling HEPSCD, they do not allege that Mayor Turner's phone call caused them to be fearful of exercising their First Amendment rights. *See Reed v. Scheffler*, No. 11-6423, 2016 WL 6440115, at *4 (D.N.J. Oct. 28, 2016) (dismissing a First Amendment retaliation claim because plaintiff failed to allege that he was fearful of exercising his rights after the alleged retaliation took place). Plaintiffs therefore fail to plausibly plead a necessary element in First Amendment retaliation claims.

Plaintiffs also do not meet the third element of the claim because they fail to establish a causal link between the alleged protected conduct -- refusing to politically support Mayor Turner's administration, filing the Natsis I litigation, reporting government officials to media sources, and direct complaints to government officials -- and the alleged retaliatory action, Mayor Turner's phone call to HEPSCD. Plaintiffs do not allege any facts to suggest that engaging in the protected conduct was the reason that Mayor Turner made the phone call to HEPSCD. In fact, the SAC alleges that Mayor Turner made the phone call because he felt that HEPSCD's "issuance of the

16

permit would delay court proceedings." SAC ¶ 397. Yet, the SAC fails to indicate the court proceedings at issue. More importantly, such a statement apparently indicates that the Mayor did not wish to prolong some unknown court proceedings. The statement does not indicate that the Mayor wished to retaliate against Plaintiffs because of the court action. Simply stating that the phone call was a retaliatory act is not enough to establish a plausible claim. *Twombly*, 550 U.S. at 545 (finding a complaint "requires more labels and conclusions, and a formulaic recitation of a cause of action's elements will not do").

For those reasons, Counts One through Four are dismissed with prejudice[6] against Mayor Turner in his personal capacity.

### 2. Mayor Turner in his Official Capacity

Defendants further argue that the claims against Mayor Turner in his official capacity should be dismissed because Plaintiffs fail to plead sufficient specific facts alleging that Mayor Turner violated their constitutional rights. Def. Br. at 18–19. In contrast to personal capacity suits under Section 1983, official capacity suits "generally represent only another way of pleading an action against an *entity* of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (emphasis added) (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). A lawsuit against government officials in their official capacity is for all intents and purposes a suit against the officials' office. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). To prove liability by a municipality in an official capacity suit, "the entity's 'policy or custom' must have played a part in the violation of federal law." *Monell*, 436 U.S. at 690–691. However, that policy

---

[6] To the extent Judge Cecchi previously dismissed claims without prejudice, and the claims are still defective, the Court is dismissing them with prejudice because Plaintiffs have not indicated that they will be able to cure the deficiencies through another amended pleading.

and custom need not have "received formal approval through the body's official decisionmaking channels." *Id*. 694. A plaintiff therefore cannot bring an action against government officials in their official capacity for a single alleged wrongful act, or even a pattern of alleged wrongful acts if they commit those acts alone. *See id*.

Here, Plaintiffs failed to allege specific conduct as to Mayor Turner to demonstrate a "policy or custom" of retaliatory conduct. As noted above, the only allegations particular to Mayor Turner is the lone phone call to HEPSCD that he allegedly made to retaliate against Plaintiffs. Plaintiffs' remaining allegations state in broad, sweeping language that "Defendants" (as opposed to Mayor Turner specifically) retaliated against Plaintiffs for lack of political affiliation and to suppress their First Amendment rights. Such allegations do not plausibly allege a policy or custom of retaliatory conduct against Mayor Turner.

Therefore, Counts One through Four of the SAC are dismissed with prejudice as to Mayor Turner in his official capacity.

### D. False Arrest

Defendants argue that Plaintiffs' claims for false arrests in 2002, 2004, and 2009 should be dismissed as barred by the statute of limitations. A claim for false arrest is governed by a two-year statute of limitations. *Clarke v. New Jersey State Police*, No. 03-3240, 2007 WL 4554254, at *3 (D.N.J. Dec. 20, 2007). The allegations pertaining to the 2002 and 2004 arrest by Defendants Cannon and Hablitz, respectively, are not barred by the statute of limitations for the same reasons discussed above in Section III.B (they waived the defense in the 2004 consent decree). The

allegations regarding the 2009 arrest, however, took place prior to the running of the limitations period -- December 3, 2011 -- and are barred by the statute of limitations.[7]

### E.  Abuse of Process

Plaintiffs allege two forms of abuse of process in Count Seven.  Plaintiffs claim that Defendants abused process by (1) falsely charging and prosecuting Plaintiff Konstantinos with a criminal complaint for digging a twenty-foot trench on his neighbors' property in violation of a town regulation and (2) denying Plaintiffs building permits through the Weehawken building permit application process.

As an initial matter, Plaintiffs fail to detail which particular Defendant(s) they are asserting abuse of process claims against.  Plaintiffs simply allege wrongdoing by "Defendants" collectively.  This overbroad accusation does not plausibly state a claim against any particular Defendant.  However, even ignoring that pleading deficiency, Plaintiffs fail to allege sufficient facts to state a claim for abuse of process.

#### 1.  Digging the Trench on Neighbor's Property

Defendants argue that Plaintiffs failed to state a claim for abuse of process for falsely charging and prosecuting Plaintiff Kostantinos for crimes related to digging a trench on his neighbor's property. Judge Cecchi dismissed Plaintiffs' abuse of process claim for failing to plead "any facts about an abuse of process occurring after Plaintiff Konstantinos Natsis was arrested." J. Cecchi Op. at 18.  Plaintiffs attempted to cure this deficiency by pleading that Elise Dinardo, Esq., counsel for Defendants in this case, unexpectedly appeared as a special prosecutor against

---

[7] Additionally, there are no allegations that Plaintiff Helen was ever arrested.  Accordingly, Count Five is dismissed with prejudice as to her.

Plaintiff Konstantinos in Bayonne -- the venue where Plaintiff Konstantinos was being prosecuted due to Weehawken's conflict of interest.

A claim for "abuse of process is concerned with perversion of process *after* litigation has begun." *Gebhart v. Steffen*, 574 F. App'x 156, 160 (3d Cir. 2014) (emphasis added) (internal quotation marks omitted). In order to assert a claim for abuse of process, a plaintiff must allege that "the improper use must be the *primary* purpose of the proceeding and there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive or spite or ulterior purpose of benefit to the defendant." *Id.* The Appellate Division has described abuse of proves as follows:

> The gist of the tort is misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which the process is used, once it is issued, is the only thing of importance.  The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wil[l]ful act in the use of the process not proper in the regular conduct of the proceeding.  Some definite act or threat not authorized by the process, or aimed at an objective not legitimate the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.  The improper purpose usually takes the form of coercion to obtain a collateral advantage, such as the surrender of property, by the use of the process as a threat or club.  There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

*Gambocz v. Apel*, 102 N.J. Super. 123, 128 (App. Div. 1968) (internal quotation marks omitted).

Here, Plaintiffs allege that Defendants abused process because DiNardo served as the special prosecutor against Plaintiff Konstantinos regarding his arrest for digging the trench. Plaintiffs allege this was abuse of process because DiNardo served as counsel for the town of Weehawken in this case and his trial was removed to Bayonne because of Weehawken's conflict

of interest. SAC ¶ 476–81. However, the only particular allegations set forth by Plaintiff pertain to DiNardo, who is not a defendant in this matter. *See Adams v. Selhorst*, 779 F. Supp. 2d 378, 390 (D. Del.) (noting abuse of process claim should have been brought against prosecuting attorney as opposed to arresting officers), *aff'd sub nom. Adams v. Officer Eric Selhorst*, 449 F. App'x 198 (3d Cir. 2011). Plaintiffs other allegations of abuse of process reference "Defendants" generally without the requisite level of plausibility. Therefore, Count Seven as to the prosecution of Plaintiff Konstantinos is dismissed without prejudice.

### 2. Denial of Building Permits

Plaintiffs allege additional new facts in the SAC claiming that they submitted permit applications to the Weehawken Building Department and that they have not received the permits they applied for. SAC ¶ 469–73. Plaintiffs claim that "Defendants" abused the Weehawken Building Department permit application process by intentionally and maliciously continuing to obstruct their permit application process so that the Plaintiffs cannot clean, clear, and develop their property. *Id.* Through the factual allegations, it can be inferred that there was a pattern by the Weehawken Building Department that could be seen as a misuse or misapplication of the building permit process. *See Simone v. Golden Nugget Hotel & Casino*, 844 F.2d 1031, 1036 (3d Cir. 1988) (holding that "abuse of process is the misuse or misapplication of the legal procedure in a manner not contemplated by law" (internal quotation marks omitted). Importantly, however, Plaintiffs do not specify which Defendants allegedly abused process with regards to the building permits. Accordingly, the abuse of process claim as to the building permit applications is dismissed without prejudice.

### F.  Civil Conspiracy Under 42 U.S.C. § 1985

In order to state a claim of conspiracy in violation of 42 U.S.C. § 1985(3) a plaintiff must allege the following four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners of Am., Local 610 AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983).   Conspiracy must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.*  Further, the Third Circuit held that § 1985(3) "does not provide a cause of action for individuals allegedly injured by conspiracies motivated by discriminatory animus directed toward their political affiliation." *Farber v. City of Paterson*, 440 F.3d 131 (3d. Cir. 2006); *see also Henry v. Jersey City Police Dep't*, No. 14-5480, 2016 WL 1586875, at *7 (D.N.J. Apr. 20, 2016) (granting motion to dismiss claim under Section 1985(3) when plaintiff failed to allege conspiracy was motivated by race or class).

Plaintiffs allege in Count Ten that Defendants retaliated against them to "humiliate them so they would leave their property."  SAC ¶ 498.  This claim was dismissed by Judge Cecchi because it was based on Plaintiffs' political affiliation, and not based on any other racial or otherwise class-based animus, as required by law.  In the SAC, Plaintiffs fail to allege any new facts that the conspiracy claim was related to racial or any other class-based animus.  Plaintiffs do not contest Defendants' position in their opposition papers.  Therefore, Count Ten is dismissed with prejudice.

IV.     **CONCLUSION**

For the reasons discussed above, Counts One through Five are dismissed as to Defendants Fulcher and Lamolino with prejudice.  Counts One through Four are dismissed with prejudice as to Mayor Turner in his personal and official capacity.  Count Five is dismissed with prejudice as to Plaintiff Helen Natsis.  Count Five is also dismissed as to Plaintiff Konstantinos' arrest that took place in 2009.  Count Seven is dismissed without prejudice.  Count Ten is dismissed with prejudice.  All Counts as to Defendants Same and Johnson are dismissed without prejudice.  Plaintiffs have thirty (30) days from the date of this Opinion to file an amended complaint, if they so choose, as to the Counts or Defendants dismissed without prejudice, consistent with this Opinion.  An appropriate order accompanies this opinion.

Dated: March 10, 2017

John Michael Vazquez, U.S.D.J.